IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| ANNIE M. SHELTON, and<br>MARY SHAVERS, on behalf of<br>themselves and as<br>representatives of all<br>others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>G. WILLIAM ARCHER, W. OWEN<br>BEMENT, J. B. COLLINGS, JR.,<br>JAMES M. DINGES, JOHN BYRON<br>SMART, JR., COLICE ERVIN WATTS,<br>and CITY OF FULSHEAR, TEXAS,<br><br>Defendants. | § <br>§ <br>§ <br>§ <br>§ <br>§ <br>§ <br>§ <br>§ <br>§ <br>§ <br>§ <br>§ <br>§ <br>§ <br>§ | CIVIL ACTION NO. H-05-1263 |

<u>MEMORANDUM AND ORDER</u>

Pending is Defendants G. William Archer, W. Owen Bement, J.B. Collins, Jr., James M. Dinges, John Byron Smart, Jr., Colice Ervin Watts and the City of Fulshear, Texas's First Amended Motion to Dismiss for Failure to State a Claim (Document No. 28).[1]  After having carefully considered the motion, objections, response, reply, and the applicable law, the Court concludes as follows:

---

[1] Also pending is Plaintiffs' Motion for Leave (Document No. 58) requesting leave to file a motion for declaratory judgment and memorandum that exceeds 25 pages.  In light of this Memorandum and Order, which reduces the numbers of parties and narrows the issues, there will be no need to exceed the Court's 25-pages limit on briefs.  Accordingly, the Motion for Leave (Document No. 58) is DENIED.

I.   Background

Plaintiffs Annie M. Shelton and her mother, Mary Shavers ("Plaintiffs"), who are black, own a parcel of land in the City of Fulshear, Texas (the "City") upon which mobile/manufactured homes were situated for more than 25 years.[2]  Plaintiffs claim that Defendants Mayor James M. Dinges, Mayor "pro tem"/Alderman John Byron Smart, Jr., and Aldermen G. William Archer, W. Owen Bement, J.B. Collins, Jr., and Colice Ervin Watts, all of whom are alleged to be white except for Alderman Collins, who is alleged to be black (collectively "Defendant Aldermen"), and the City violated Plaintiffs' constitutional and statutory rights by enacting a new ordinance regulating mobile/manufactured homes, allegedly in order to increase the Defendant Aldermen's own property values and to force Plaintiffs and other mobile/manufactured home residents into a "manufactured home park," which in reality would be a "ghetto."

In June, 2002, the City adopted Ordinance 02-884, the "Fulshear Manufactured Housing Ordinance," which regulates the location of manufactured homes within the City, outlines a permit process, provides for licensing of manufactured home parks, and addresses related public health and safety matters.  *See* Document

_____

[2] The City defines a manufactured home as a structure built after 1976 that is transportable and is built on a permanent chassis and designed to be used as a dwelling with or without permanent foundation, while a mobile home shares functionally the same definition but was built before 1976.

No. 16 ex. 1.  Premised on a finding that "unregulated Manufactured Homes, Manufactured Home Parks and Manufactured Home Subdivisions can be dangerous and constitute a hazard to life and property," and seeking to "preven[t] the overcrowding of land through planned and orderly growth of the City, and [to avoid] an undue concentration of the population," id. at 1, the Ordinance contains over 20 pages of requirements regulating the building and maintaining of manufactured homes in Fulshear--including a requirement that all future manufactured homes be located in an approved manufactured home park or subdivision.[3]  However, Plaintiffs contend that "Fulshear never had and does not have a manufactured home subdivision/park."  Document No. 16 at 14.  Except for existing manufactured homes, the Ordinance has no variance or hardship exception.

Plaintiffs contend that Ordinance 02-884 reflects a discriminatory animus toward owners and occupiers of manufactured homes--who predominantly are racial minorities--and is unconstitutional because: (1) it is predicated on factually unsupported findings; (2) it imposes an irrational, two-week limitation period for a manufactured homeowner to replace her home if it is destroyed by accident, lightning, storm, fire, or Act of God; and (3) it is unconstitutionally vague, lacks a rational basis, is not narrowly

_____

[3] Ordinance 02-884 allows existing manufactured homes to be maintained on their individual lots if they are brought into compliance with the Ordinance's regulations by October, 2002.

tailored, and does not provide for procedural due process. Plaintiffs also allege that adoption of the Ordinance, copied by Defendants from the ordinance of nearby Brookshire that *did* have manufactured home subdivisions where such homes could be situated, was not a legitimate exercise of legislative process because it "was automatically rubber-stamped by Defendants as ministerial acts" without allowing the public an opportunity fully to debate or discuss the proposal. Plaintiffs' allegations of illegitimate legislative process are combined with other allegations that all of the white Aldermen live on or just off of Bois D'Arc Lane, and have engaged as well in a series of other legislative acts to build or promote the construction of a water line and roads substantially to increase the values of "the five Bois D'Arc area Defendants' lands."

Plaintiffs allege that in July, 2004, two years after the Ordinance was enacted, Plaintiff Annie M. Shelton ("Shelton") requested of the City that water and sewer service be connected to the newly purchased manufactured home on Plaintiffs' individual lot and not in a manufactured home park. Document No. 16 ¶ 23. Kathy Mayfield ("Mayfield"), the City Secretary, informed Shelton that Ordinance 02-884 prevented her from doing so, and she also told Shelton, "If you people came to City Council meetings you would know what is going on." Id. A few days later, Mayfield told Shelton that if the home was not removed from Plaintiffs' land, the

4

City would take the land.  <u>Id.</u>  Plaintiffs allege that Defendant Mayor Dinges then unilaterally ordered--without a pre-deprivation hearing--that the water and sewer taps on Plaintiffs' land, which were previously connected to other manufactured homes, be removed.

Plaintiffs further allege that at a public hearing concerning Plaintiffs' manufactured home, Defendant Smart stated that the home had to be removed and that Shelton owed the City $180,000 in fines, based on the Ordinance's $2,000 per day penalty.  <u>Id.</u> ¶ 24. Plaintiffs contend that Defendant Archer then proposed to amend the Ordinance to include a variance for Shelton, but that Archer, after the City Council convened in a closed executive session for 65 minutes, made a motion to remove his prior motion from the table. After the motion to remove from consideration the previous variance motion was approved, the Defendant Aldermen immediately adjourned and "quickly exited chambers ignoring scores of public questions about a variance to the Ordinance." <u>Id.</u>  Approximately one month later, the City Council authorized the City Attorney to take action to enforce the Ordinance against Shelton, and the next day, the City filed a petition for injunction against Plaintiffs, alleging that Plaintiffs' manufactured home constituted a substantial danger of injury because it lacked a sewer, water, and electricity.  <u>Id.</u> ¶ 25.  Plaintiffs claim that "[a]ll Defendants know" that the home is currently unoccupied and cannot, as such, pose a substantial danger of injury.

Seeking to assert claims on behalf of a class of 49 owners of mobile/manufactured homes and 30 owners of vacant lots, Plaintiffs bring this action against Defendants the City and the Aldermen in their official and individual capacities, alleging violations of the Fair Housing Act and 42 U.S.C. §§ 1981, 1982, 1983, 1985(3), and 1986. Plaintiffs claim that Defendants' actions constituted a taking without just compensation and deprived them of their rights to substantive and procedural due process and to equal protection of the laws in violation of § 1983. Plaintiffs seek a declaratory judgment that Ordinance 02-884 is unconstitutional, as well as compensatory and punitive damages, attorney's fees, and injunctive relief. The Defendant Aldermen invoke absolute and qualified immunity, and all Defendants move to dismiss for failure to state a claim.

## II. <u>Standard of Review</u>

Fed. R. Civ. P. 12(b)(6) provides for dismissal of an action for "failure to state a claim upon which relief can be granted." When a district court reviews the sufficiency of a complaint before it receives any evidence either by affidavit or admission, its task is inevitably a limited one. *See* <u>Scheuer v. Rhodes</u>, 94 S. Ct. 1683, 1686 (1974). The issue is not whether the plaintiff will ultimately prevail, but whether the plaintiff is entitled to offer evidence to support the claims. *See* <u>id.</u>

6

In considering a motion to dismiss under Rule 12(b)(6), the district court must construe the allegations in the complaint favorably to the pleader and must accept as true all well-pleaded facts in the complaint.  *See* Lowrey v. Texas A & M Univ. Sys., 117 F.3d 242, 247 (5th Cir. 1997).  Dismissal of a claim is improper "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief."  Conley v. Gibson, 78 S. Ct. 99, 102 (1957).  "The plaintiff need not set forth all the facts upon which the claim is based; rather, a short and plain statement of the claim is sufficient if it gives the defendant fair notice of what the claim is and the grounds upon which it rests."  Mann v. Adams Realty Co., 556 F.2d 288, 293 (5th Cir. 1977).  Therefore, in challenging the sufficiency of the complaint under Rule 12(b)(6), the defendant bears the burden of proving that "no relief could be granted under any set of facts that could be proved consistent with the allegations" in the complaint.  Hishon v. King & Spalding, 104 S. Ct. 2229, 2232 (1984).  While a court generally may not go outside the complaint in addressing a Rule 12(b)(6) motion, it may consider documents attached to the complaint, as well as documents that are referred to in and central to the complaint.  *See* Kennedy v. Chase Manhattan Bank USA, NA, 369 F.3d 833, 839 (5th Cir. 2004); Scanlan v. Texas A&M Univ., 343 F.3d 533, 536 (5th Cir. 2003).

III.   <u>Discussion</u>

A.   <u>Civil Rights Act of 1866 (42 U.S.C. §§ 1981, 1982)</u>[4]

"[B]oth 42 U.S.C. § 1981 and § 1982 provide a cause of action for housing discrimination." <u>Woods-Drake v. Lundy</u>, 667 F.2d 1198, 1200 n.3 (5th Cir. 1982). To sustain a § 1981 claim, a plaintiff must establish three elements: (1) that plaintiff is a member of a racial minority; (2) that the defendant had intent to discriminate on the basis of race; and (3) that the discrimination concerned one or more of the activities enumerated in the statute--including the right "to the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens." *See* <u>Arguello v. Conoco, Inc.</u>, 330 F.3d 355, 358 (5th Cir. 2003); *see also* 42 U.S.C. § 1981(a). Importantly, "[a] finding of intentional racial discrimination is necessary for recovery against a defendant under the Civil Rights Act." <u>Hanson v. Veterans Admin.</u>, 800 F.2d 1381, 1386 (5th Cir. 1986); *see also* <u>Dehoyos v. Allstate Corp.</u>, 345 F.3d 290, 300 n.1 (5th Cir. 2003) (Jones, J., concurring in part and dissenting in part) ("In this

---

[4] Defendants cite <u>Oden v. Oktibbeha County</u>, 246 F.3d 458 (5th Cir. 2001), for the proposition that, because Defendants are alleged to be state actors, § 1983 is the exclusive remedy for violations of Plaintiffs' § 1981 rights. However, <u>Oden</u>'s holding is limited to "the liability of local government officials for their decisions affecting municipal *employment* contracts," <u>id.</u> at 464 n.5 (emphasis added), which are not at issue here.

court, §§ 1981 and 1982 have been confined to cases involving intentional racial discrimination, not disparate impact claims").

Here, Plaintiffs allege that Defendants Mayor Dinges and Mayor pro tem Smart sought "to eventually eliminate manufactured homes in Fulshear" and were motivated by a "discriminatory *animus* against mobile/manufactured homes in Fulshear, who's [sic] owners/occupiers are an identifiable minority class of persons." Document No. 16 at 24. Plaintiffs further allege that the passage of Ordinance 02-884 "caused a disparate impact on mobile/manufactured homes' owners/occupiers in Fulshear." Id. at 25. Taking these allegations as true, Plaintiffs have alleged that Defendants intended to discriminate against *mobile/manufactured home owners and occupiers* in Fulshear, which caused a disparate impact on this class of persons. Plaintiffs have failed to allege facts showing that Defendants intended to discriminate on the basis of *race*, as is required to sustain an action under both §§ 1981 and 1982. As such, Plaintiffs have failed to state a claim under §§ 1981 and 1982.

B.    42 U.S.C. 1983

1.    Constitutional Violations Alleged against Defendant Aldermen

Plaintiffs claim that Defendant Aldermen's enforcement of Ordinance 02-884 against them constituted a taking without just compensation and further allege that they were deprived of their

rights to substantive and procedural due process and to equal protection of the laws in violation of § 1983. Defendant Aldermen invoke absolute and qualified immunity and move to dismiss for failure to state a claim.

a.   Takings Claim

Plaintiffs allege that Defendant Aldermen "have taken Plaintiffs' land, temporarily, and deprived Plaintiff Shelton of all use of her property beginning in July 2004 and continuously thereafter." Document No. 16 at 28. Under the Takings Clause, a taking does not occur--and, thus, a taking claim is not ripe--"until (1) the relevant governmental unit has reached a final decision as to what will be done with the property and (2) the plaintiff has sought compensation through whatever adequate procedures the state provides." *See* Sandy Creek Investors, Ltd. v. City of Jonestown, 325 F.3d 623, 626 (5th Cir. 2003). Either the claimant must unsuccessfully seek compensation, or "it must be certain that the state *would* deny that claimant compensation were he to undertake the obviously futile act of seeking it." Samaad v. City of Dallas, 940 F.2d 925, 934 (5th Cir. 1991) (emphasis in original). Plaintiffs bear the burden of "establishing that Texas law unquestionably would afford them no remedy" before their § 1983 claims are ripe. Lewis v. City of DeSoto, No. Civ.A. 302CV1178-D, 2003 WL 292169, at *4 (N.D. Tex. 2003)(quoting Samaad, 940 F.2d at

10

935).  Here, Plaintiffs have not alleged that they unsuccessfully sought compensation through state judicial or administrative procedures, and they have not pleaded that the State of Texas does not provide adequate administrative or judicial remedies for the type of deprivation or taking alleged to have occurred.  Thus, Plaintiffs have failed to state a ripe takings claim on which relief can be granted in this Court.

      b.   <u>Due Process Claims</u>

    Plaintiffs assert that Ordinance 02-884, facially and as applied, violated their substantive and procedural due process rights.  Although it is not exactly clear how some of the alleged self-interest motivated legislative acts or government abuse by the five "Bois D'Arc area Defendants" tie in with enactment of the Manufactured Housing Ordinance, or how the alleged vagueness of the Ordinance was applied to injure Plaintiffs, after viewing the complaint most favorably to Plaintiffs the Court finds sufficient inferences may be drawn therefrom to require denial of Defendants' motion to dismiss the substantive due process claim.

    Plaintiffs allege two procedural due process violations: (1) the passage of Ordinance 02-884, and (2) the deprivation of Plaintiffs' water and sewer service without a pre-deprivation hearing.  *See* Document No. 16 at 16, 17.  Procedural due process attaches to governmental actions that are administrative or

11

adjudicative but not legislative; thus, "[t]he dispositive inquiry here is whether the [governmental action] was a legislative or administrative action." Jackson Court Condominiums, Inc. v. City of New Orleans, 874 F.2d 1070, 1074 (5th Cir. 1989).  In deciding this question:

> Conduct of a municipal body is likely to be deemed legislative when an elected group, such as a city council, makes a general zoning decision which applies to a large group of interests.  Conversely, a municipal body's action may be more likely termed adjudicative [or administrative] if an appointed group, such as a zoning board, makes a specific decision regarding a specific piece of property.

Id., 874 F.2d at 1075 (quoting County Line Joint Venture v. City of Grand Prairie, 839 F.2d 1142, 1144 (5th Cir.), cert. denied, 109 S. Ct. 223 (1988)).  On its face, Ordinance 02-884 purports to provide for the health and safety of the entire City of Fulshear by regulating manufactured homes, preventing the overcrowding of land through planned and orderly growth, and avoiding an undue concentration of the population.  See Document No. 16 ex. A at 1. As such, the passage of Ordinance 02-884 appears to "appl[y] to a large group of interests" and constitutes a legislative act, to which procedural due process does not attach.  However, Plaintiffs have stated a viable procedural due process claim by alleging that Defendant Mayor Dinges, without a pre-deprivation hearing, unilaterally ordered the removal of Plaintiffs' water and sewer taps--which constitutes a specific, administrative decision

12

regarding a specific piece of property that requires procedural due process.

      c.   <u>Equal Protection Claim</u>

In the Fifth Circuit, a plaintiff can assert an equal protection claim in one of two ways: (1) by proving that "similarly situated individuals were treated differently," or (2) by proving that an official selectively used his power against a single party, and his acts were "motivated by improper considerations, such as race, religion, or the desire to prevent the exercise of a constitutional right." *See* <u>Bryan v. City of Madison</u>, 213 F.3d 267, 276-77 (5th Cir. 2000). An equal protection inquiry is proper "[o]nly if the challenged government action classifies or distinguishes between two or more relevant groups." <u>Qutb v. Strauss</u>, 11 F.3d 488, 492 (5th Cir. 1993), *cert. denied*, 114 S. Ct. 2134 (1994) (engaging in equal protection analysis where curfew ordinance on its face distinguished between classes of individuals on the basis of age). *Compare* <u>Rolf v. City of San Antonio</u>, 77 F.3d 823, 826, 828 (5th Cir. 1996) (appellant landowners stated cognizable equal protection claim where they alleged that the city "continued to seek condemnation of appellants' 3.5 acre tract, but did not seek condemnation of similarly situated lands"), *with* <u>Vulcan Materials Co. v. City of Tehuacana</u>, 238 F.3d 382, 389 (5th Cir. 2001) (no equal protection claim stated where ordinance

13

prohibited the use of heavy equipment only in connection with quarrying or mining but not other activities because the fact "[t]hat everyone is forbidden to engage in certain activities is not the same as treating similarly situated actors differently").

Here, Plaintiffs allege that Ordinance 02-884 violates the Equal Protection Clause because it "stigmatizes, separates and segregates an identifiable minority low-income class of persons from other Fulshear residents." *See* Document No. 16 at 15. However, Ordinance 02-884--a copy of which is attached to Plaintiffs' Seconded Amended Complaint--provides one regulatory scheme for the recited purpose of promoting the health, public safety, and general welfare of the City by the regulation of manufactured homes and manufactured home parks in the entire city, with certain penalties for those who fail to comply. *See* Document No. 16 ex. A.   The Ordinance does not provide a different regulatory scheme or different penalties for persons of differing races or economic status.   To the contrary, the Ordinance on its face enacts comprehensive regulatory standards applicable to all persons who own or desire to place a manufactured home in the City of Fulshear.   Because Plaintiffs have failed to allege how Ordinance 02-884 treats similarly situated landowners differently or otherwise distinguishes between two or more classes of individuals, Plaintiffs have not stated a viable equal protection claim.

14

2.   <u>Defendant Aldermen's Immunity Defenses</u>

When sued in their individual capacity, local officials may assert immunity from suit.   <u>Hernandez v. City of Lafayette</u>, 643 F.2d 1188, 1193 (5th Cir. 1981).   Whether local officials are entitled to absolute immunity depends upon whether their challenged actions are properly characterized as legislative.   <u>Bryan v. City of Madison</u>, 213 F.3d 267, 272 (5th Cir. 2000)(explaining that while legislative immunity protects officials fulfilling legislative functions even if they are not legislators per se, this absolute immunity "only protects those duties that are functionally legislative").   The Fifth Circuit has found that "[i]f the action involves establishment of a general policy, it is legislative; if the action singles out specific individuals and affects them differently from others, it is administrative."   <u>Hughes v. Tarrant County</u>, 948 F.2d 918, 921 (5th Cir. 1991) (citing   <u>Cutting v. Muzzey</u>, 724 F.2d 259, 261 (1st Cir. 1984)).   For this inquiry, a local official's subjective intent is not pertinent; rather, "[w]hether an act is legislative turns on the nature of the act, rather than on the motive or intent of the official performing it." <u>Bogan v. Scott-Harris</u>, 118 S. Ct. 966, 973 (1998).

Plaintiffs challenge the following acts: (1) the Defendant Aldermen's enactment of Ordinance 02-884; (2) and Mayor Dinges's "unilateral" order to remove Plaintiffs' water and service without a pre-deprivation hearing.   The first action is a legislative act,

as the Defendant Aldermen adopted a general land use policy for the declared purpose to promote the health, public safety, and general welfare of the entire City through the regulation of manufactured homes and the promotion of planned and orderly growth, *see* Document No. 16 ex. A at 1.  *See, e.g.*, Bogan v. Scott-Harris, 118 S. Ct. at 973 (finding that a legislator's "acts of voting for an ordinance were, in form, quintessentially legislative . . . [where] the ordinance reflected a discretionary, policymaking decision implicating the budgetary priorities of the city"); Bryan, 213 F.3d at 275 (granting legislative immunity to activities that "were irregular and inappropriate . . . [b]ut they were still legislative in nature because they involved a rezoning provision").  As such, the Defendant Aldermen have absolute immunity for their adoption of Ordinance 02-884, a "quintessentially legislative" act.  The second action, however--the Mayor's removal of utilities services from Plaintiffs' land without a pre-deprivation hearing--is an administrative act inasmuch as it "singles out specific individuals and affects them differently from others."  Because the Mayor's decision to remove Plaintiffs' utilities services was "specific and particular," *see* Bryan, 213 F.3d at 274, absolute immunity does not protect this non-legislative act.[5]

---

[5]  The Mayor has asserted qualified immunity, but the procedural due process claim against the mayor will not be dismissed on the pleadings.  *See* Rutland v. Pepper, 404 F.3d 921, 923 (5th Cir. 2005) ("The doctrine of qualified immunity shields government officials from civil liability as long 'as their conduct

3.   <u>The City</u>

To prevail on a § 1983 claim against a municipality, a plaintiff must establish three elements: "a policymaker; an official policy; and a violation of constitutional rights whose 'moving force' is the policy or custom." <u>Piotrowski v. City of Houston</u>, 237 F.3d 567, 578 (5th Cir. 2001) (quoting <u>Monell v. Dep't of Social Servs.</u>, 98 S. Ct. 2018, 2037 (1978)).  In other words, the plaintiff "must show that the municipal action was taken with the requisite degree of culpability and must demonstrate a direct causal link between the municipal action and the deprivation of federal rights." <u>Bd. of County Comm'rs v. Brown</u>, 117 S. Ct. 1382, 1385 (1997).  Construing the allegations in the light most favorable to Plaintiffs, Plaintiffs have identified a policymaker--City Council--that adopted an ordinance representing an official policy of the City.  Further, liberally construing Plaintiffs' allegations in their favor, a direct causal link is alleged between the municipal policy and the alleged violation of substantive due process and one remaining procedural due process violation alleged by Plaintiffs.  Thus, these claims will not be dismissed.

---

does not violate clearly established statutory or constitutional rights of which a reasonable person would have known'") (quoting <u>Harlow v. Fitzgerald</u>, 102 S. Ct. 2727, 2738 (1982)).

C.   42 U.S.C. §§ 1985(3) and 1986

Title 42 U.S.C. §§ 1985(3) and 1986 "are directed at conspiracies to interfere with civil rights." Bryan v. City of Madison, 213 F.3d 267, 276 (5th Cir. 2000). "In this circuit, a § 1985(3) claim must allege that '(1) the defendants conspired (2) for the purposes of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws, and (3) one or more of the conspirators committed some act in furtherance of the conspiracy; whereby (4) another person is injured in his person or property or deprived of having and exercising any right or privilege of a citizen of the United States; and (5) the action of the conspirators is motivated by a racial animus.'" Horaist v. Doctor's Hosp. of Opelousas, 255 F.3d 261, 270 n.12 (5th Cir. 2001)(quoting Wong v. Stripling, 881 F.2d 200, 202-03 (5th Cir. 1989)). Here, although Plaintiffs allege that Defendants have a "discriminatory animus" against mobile/manufactured homes, Plaintiffs do not explain why or how this animus is racially motivated. Because "[i]n this circuit, we require an allegation of a race-based conspiracy," Bryan, 213 F.3d at 276, Plaintiffs have not stated a cause of action upon which relief can be granted under § 1985(3). See Newberry v. E. Tex. State Univ., 161 F.3d 276, 281 n.12 (5th Cir. 1998) ("The [Supreme] Court, however, has never held that nonracial animus is sufficient" to support a § 1985(3)

18

action).  Furthermore, because a valid § 1985 claim is a prerequi-
site to a § 1986 claim, <u>Bryan</u>, 213 F.3d at 276, Plaintiffs have not
stated a claim upon which relief can be granted under § 1986.

D.    <u>Fair Housing Act (FHA)</u>

        Plaintiffs allege that Defendants violated the FHA, 42 U.S.C.
§ 3604(a), by enacting an ordinance that displaces manufactured
homes--whose owners were disproportionately racial minorities--to
a manufactured home park "so that mobile/manufactured homes would
be eventually eliminated in Fulshear."[6]  *See* Document No. 16 at 6.
Section 3604(a) of the FHA makes it unlawful "[t]o refuse to sell
or rent . . . or *otherwise make unavailable or deny*, a dwelling to
any person because of race, color, religion, sex, familial status,
or national origin."  42 U.S.C. § 3604(a)(emphasis added).  "[A]
violation of the FHA may be established not only by proof of
discriminatory intent, but also by a showing of a significant
discriminatory effect."  <u>Simms v. First Gibraltar Bank</u>, 83 F.3d
1546, 1555 (5th Cir. 1996).  The Fifth Circuit recently clarified
that § 3604(a) "is designed to ensure that no one is denied the
right to live where they choose for discriminatory reasons."  <u>Cox
v. City of Dallas</u>, 430 F.3d 734, 740 (5th Cir. 2005) (quoting
<u>Southend Neighborhood Improvement Ass'n v. County of St. Clair</u>, 743

---

        [6] Plaintiffs allege that black and Hispanic families own over
85% of mobile/manufactured homes in Fulshear.  *See* Document No. 16
at 10.

F.2d 1207, 1210 (7th Cir. 1984)).  Specifically, § 3604(a) applies to situations "where the availability of housing for prospective owners or tenants is implicated."  *See* id. at 741-42 (citing exclusionary zoning prac-tices as one example); *see also* Dews v. Town of Sunnyvale, 109 F. Supp. 2d 526, 530 (N.D. Tex. 2000)(noting that the FHA "has been interpreted to prohibit municipalities from using their zoning powers in a discriminatory manner, that is in a manner which excludes housing for a group of people on the basis of one of the enumerated classifications")(citing Huntington Branch, NAACP v. Town of Huntington, 844 F.2d 926 (2d. Cir.), *aff'd* 109 S. Ct. 276 (1988)).  Here, Plaintiffs allege that Ordinance 02-884 has a discriminatory impact on racial minorities, who are the primary owners of mobile/manufactured homes in the City, by restricting their ability to locate in a particular area.  This allegation is sufficient to state an FHA claim against the City.

### IV.   Order

Based on the foregoing, it is

ORDERED that Defendants G. William Archer, W. Owen Bement, J.B. Collins, Jr., James M. Dinges, John Byron Smart, Jr., Colice Ervin Watts, and City of Fulshear's First Amended Motion to Dismiss for Failure to State a Claim (Document No. 28) is GRANTED in PART, as follows: All of Plaintiffs' claims are DISMISSED against Defendant Aldermen Archer, Bement, Collings, Smart, and Watts, and

these Defendants are DISMISSED from this case; all of Plaintiffs'
claims against Defendant Mayor Dinges are DISMISSED, except for
Plaintiffs' procedural due process claim for the deprivation of
Plaintiffs' water and sewer taps; all of Plaintiffs' claims against
the City under 42 U.S.C. §§ 1981, 1982, 1985(3), and 1986, and
equal protection claim under § 1983 are DISMISSED; and Plaintiffs'
takings claim under § 1983 against the City is DISMISSED without
prejudice as not ripe.   Defendants' Motion is otherwise DENIED,
leaving Plaintiffs' claims against the City for violation of the
Fair Housing Act and § 1983 claim for denial of substantive due
process, and Plaintiffs' § 1983 procedural due process claim
against both the City and Mayor Dinges for deprivation of
Plaintiffs' water and sewer taps.

   The clerk shall notify all parties and provide them with a
true copy of this Order.

   SIGNED at Houston, Texas, on this 28th day of February, 2006.


                              EWING WERLEIN, JR.
                         UNITED STATES DISTRICT JUDGE